**ORIGINAL**

# In the United States Court of Federal Claims

No. 16-954
Filed: March 20, 2017

FILED

MAR 20 2017

U.S. COURT OF
FEDERAL CLAIMS

```
*****************************************
                                        *
                                        *
                                        *
SYLVAN GODFREY,                         *
                                        *
                                        *
        Plaintiff, pro se,              *
                                        *
                                        *
                                        *
v.                                      *
                                        *
                                        *
THE UNITED STATES,                      *
                                        *
                                        *
        Defendant.                      *
                                        *
                                        *
                                        *
*****************************************
```

28 U.S.C. § 1491 (Tucker Act Jurisdiction);
28 U.S.C. § 1495 (Damages for Unjust Conviction);
28 U.S.C. § 2513 (Claims Against the United States for Unjust Conviction);
Breach Of Settlement Agreement;
Fifth Amendment to the United States Constitution;
Rules of the United States Court of Federal Claims ("RCFC") 12(b)(1) (Subject Matter Jurisdiction);
RCFC 12(b)(6) (Failure to State a Claim Upon Which Relief Can Be Granted);
RCFC 15(a) (Amending Pleadings Before Trial).

**Sylvan Godfrey**, Marianna, Florida, Plaintiff, *pro se*.

**Courtney D. Enlow**, United States Department of Justice, Civil Division, Washington, D.C., Counsel for the Government.

### MEMORANDUM OPINION AND ORDER GRANTING-IN-PART AND DENYING-IN-PART THE GOVERNMENT'S MOTION TO DISMISS

**BRADEN**, *Chief Judge*.

## I.   RELEVANT FACTUAL BACKGROUND.[1]

Sylvan Godfrey is a member of the Sioux Indian Tribe of South Dakota, serving a 365-month prison term at the Federal Corrections Institute ("FCI") in Marianna, Florida. Compl. at 1. Before his imprisonment in 2013, Mr. Godfrey was a plaintiff in a class action lawsuit captioned *Cobell v. Salazar*, United District Court for the District of Columbia, Civil Action No. 96-1285.

---

[1] The relevant facts discussed herein were derived from Plaintiff's August 4, 2016 Complaint ("Compl."). ECF No. 1.

Compl. at 1, 3. The history of the *Cobell* litigation has been summarized by the United States Court of Appeals for the District of Columbia Circuit, as follows:

> [In 1996], five named plaintiffs ('Class Representatives') initiated a class action lawsuit [in the United States District Court for the District of Columbia,] . . . seeking to compel the United States Department of the Interior to perform a historical accounting of the hundreds of millions of dollars held by the Department in trust for Native Americans. That accounting was required by the American Indian Trust Fund Management Reform Act of 1994, Pub.L. No. 103–412, 108 Stat. 4239. In 2001, [the United States Court of Appeals for the District of Columbia Circuit held] . . . that the Department had unreasonably and unlawfully delayed that statutorily mandated accounting. *Cobell v. Norton*, 240 F.3d 1081, 1105 (D.C. Cir. 2001). For the next decade, the parties, the district court, and Congress all struggled to determine how the Department could feasibly discharge its legal duty to conduct an accounting of the hundreds of thousands of 'Individual Indian Money' trust accounts under its control. . . .
>
> [On December 7, 2009, the parties submitted to the United States District Court for the District of Columbia a proposed Class Action Settlement Agreement. *Cobell v. Salazar*, Civil Action No. 96-1258, ECF No. 3660-2. One year later, on December 8, 2010, Congress enacted the Claims Resolution Act, Pub.L. No. 111–291, 124 Stat. 3064 (2010), authorizing, ratifying, and confirming the proposed Settlement Agreement, *id.* § 101(c)(1).]
>
> Under the Settlement Agreement, each member of what was known as the 'Historical Accounting Class' received $1,000 in lieu of an actual accounting.[2] . . . A separate class, known as the 'Trust Administration Class,' received a baseline payment of $500 and a prorated share of any funds left over in the settlement account after specified payments were made, including attorneys' fees and awards

---

[2] The December 7, 2009 *Cobell* Settlement Agreement provides:

Historical Accounting Class means those individual Indian beneficiaries (exclusive of those who prior to the filing of the Complaint on June 10, 1996 had filed actions on their own behalf stating a claim for a historical accounting) alive on [September 30, 2009] and who had an [Individual Indian Money ('IIM')] Account[, pursuant to 25 C.F.R. 115.002,] open during any period between October 25, 1994 and [September 30, 2009], which IIM Account had at least one cash transaction credited to it at any time as long as such credits were not later reversed. Beneficiaries deceased as of [September 30, 2009] are included in the Historical Accounting Class only if they had an IIM Account that was open as of [September 30, 2009]. The estate of any Historical Accounting Class Member who dies after the [September 30, 2009] but before distribution is in the Historical Accounting Class.

*Cobell v. Salazar*, Civil Action No. 96-1258, ECF No. 3660-2 at ¶ A.16.

to the Class Representatives.[3]  *Id.* at 914–15.  In exchange, all class members released the Department of Interior from liability arising out of prior mismanagement of their trust accounts.  *Id.*

*Cobell v. Jewell*, 802 F.3d 12, 16–17 (D.C. Cir. 2015).

## II.   PROCEDURAL HISTORY.

On August 4, 2016, Mr. Godfrey ("Plaintiff") filed a Complaint ("Compl.") in the United States Court of Federal Claims, alleging that the Government violated his statutory and constitutional rights, as well as the terms of the December 9, 2009 *Cobell* Settlement Agreement. ECF No. 1.  On the same day, Plaintiff filed a Motion For Leave To Proceed *In Forma Pauperis* and a Notice Of Directly Related Cases.  ECF Nos. 2, 4.

On September 30, 2016, the Government filed a Motion To Dismiss the August 4, 2016 Complaint ("Gov't Mot."), pursuant to Rules of the United States Court of Federal Claims ("RCFC") 12(b)(1) and 12(b)(6).  ECF No. 8.  Plaintiff's Response to the September 30, 2016 Motion was due by October 31, 2016.  But, weeks after the deadline, Plaintiff failed to file any response or objection with the court.  Therefore, on December 2, 2016, the court issued an Order, instructing Plaintiff to show cause why this case should not be dismissed for failure to prosecute. ECF No. 9.

On December 19, 2016, Plaintiff filed a Motion For Extension Of Time To File Opposition To Defendant's Motion To Dismiss, To Amend Complaint, And For Third Party Representative ("Pl. Mot.").  ECF No. 10.  On January 3, 2016, the court granted Plaintiff an enlargement of time to file a response to the Government's September 30, 2016 Motion To Dismiss, but did not rule on the Plaintiff's December 19, 2016 Motion To Amend or Motion For Third Party Representative. ECF No. 11.  On January 4, 2017, the Government filed a Response to the pending December 19, 2016 Motions.  ECF No. 12.

---

[3] The December 7, 2009 *Cobell* Settlement Agreement provides:

Trust Administration Class shall mean those individual Indian beneficiaries (exclusive of persons who filed actions on their own behalf, or a group of individuals who were certified as a class in a class action, stating a Funds Administration Claim or a Land Administration Claim prior to the filing of the Amended Complaint) alive as of [September 30, 2009] and who have or had IIM Accounts in the 'Electronic Ledger Era' (currently available electronic data in systems of the Department of the Interior dating from approximately 1985 to the present), as well as individual Indians who, as of [September 30, 2009], had a recorded or other demonstrable ownership interest in land held in trust or restricted status, regardless of the existence of an IIM Account and regardless of the proceeds, if any, generated from the Land.

*Cobell v. Salazar*, Civil Action No. 96-1258, ECF No. 3660-2 at ¶ A.35.

On January 18, 2017, Plaintiff filed a Motion To Alter Or Amend The December 19, 2016 Judgment ("Pl. Resp."), that the court considers a response to the September 30, 2016 Motion To Dismiss. ECF No. 14. Therein, Plaintiff argued that: (1) another case pending before the United States Court of Federal Claims, *Redboy v. United States*, No. 17-19, is "material to [Plaintiff's] ability to state the jurisdiction of this court;" (2) the record reflects Plaintiff's effort to oppose the Government's Motion To Dismiss; and (3) Plaintiff "lacks the ability to pursue his rights as a truly *pro se* litigant," because the staff at FCI-Marianna deprived Victor Fourstar, Plaintiff's "third-party representative," of his legal files. Pl. Resp. at 2.

## III.   DISCUSSION.

### A.   Relevant Legal Standards.

#### 1.   Jurisdiction.

The United States Court of Federal Claims has jurisdiction under the Tucker Act, 28 U.S.C. § 1491, "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The Tucker Act, however, is "a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages. . . . [T]he Act merely confers jurisdiction upon [the United States Court of Federal Claims] whenever the substantive right exists." *United States v. Testan*, 424 U.S. 392, 398 (1976).

To pursue a substantive right under the Tucker Act, a plaintiff must identify and plead an independent contractual relationship, constitutional provision, federal statute and/or executive agency regulation that provides a substantive right to money damages. *See Todd v. United States*, 386 F.3d 1091, 1094 (Fed. Cir. 2004) ("[J]urisdiction under the Tucker Act requires the litigant to identify a substantive right for money damages against the United States separate from the Tucker Act[.]"); *see also Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (*en banc*) ("The Tucker Act . . . does not create a substantive cause of action; . . . a plaintiff must identify a separate source of substantive law that creates the right to money damages. . . . [T]hat source must be 'money-mandating.'"). Specifically, a plaintiff must demonstrate that the source of substantive law upon which he relies "can fairly be interpreted as mandating compensation by the Federal Government[.]" *Testan*, 424 U.S. at 400. And, the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988) ("[O]nce the [trial] court's subject matter jurisdiction [is] put in question . . . [the plaintiff] bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence.").

#### 2.   Standing.

Constitutional standing is a fundamental jurisdictional consideration. *See Glass v. United States*, 258 F.3d 1349, 1355 (Fed. Cir. 2001) ("The United States Constitution limits judicial power to the resolution of actual 'cases' or 'controversies.'"); *see also Myers Investigative And Sec. Servs., Inc. v. United States*, 275 F.3d 1366, 1369 (Fed. Cir. 2002) ("[S]tanding is a threshold jurisdictional issue."). Although the constitutional standing requirements are derived from Article

III of the United States Constitution, those requirements apply to the United States Court of Federal Claims. *See Anderson v. United States*, 344 F.3d 1343, 1350 n.1 (Fed. Cir. 2003) ("The Court of Federal Claims, though an Article I court, . . . applies the same standing requirements enforced by other federal courts created under Article III.").

To establish standing, a plaintiff must show that he or she suffered, "an injury-in-fact that is both fairly traceable to the challenged conduct of the defendant and likely redressable by a favorable judicial decision." *Figueroa v. United States*, 466 F.3d 1023, 1029 (Fed. Cir. 2006). The party invoking jurisdiction, bears the burden of establishing constitutional standing. *See Myers Investigative*, 275 F.3d at 1369 ("[T]he party invoking federal jurisdiction bears the burden of establishing [its] elements.") (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, (1992)).

### 3. Standard Of Review For A Motion To Dismiss, Pursuant To RCFC 12(b)(1).

A challenge to the United States Court of Federal Claims' "general power to adjudicate in specific areas of substantive law . . . is properly raised by [an RCFC] 12(b)(1) motion[.]" *Palmer v. United States*, 168 F.3d 1310, 1313 (Fed. Cir. 1999); *see also* RCFC 12(b)(1) ("Every defense to a claim for relief in any pleading must be asserted in the responsive pleading. . . . But a party may assert the following defenses by motion: (1) lack of subject-matter jurisdiction[.]"). When considering whether to dismiss an action for lack of subject matter jurisdiction, "a court must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff." *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011).

### 4. Standard Of Review For A Motion To Dismiss, Pursuant To RCFC 12(b)(6).

A claim is subject to dismissal under RCFC 12(b)(6), if it does not provide a basis for the court to grant relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007) ("[A well-pleaded complaint] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right of relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." (internal citations omitted)); *see also Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002) ("A motion to dismiss . . . for failure to state a claim upon which relief can be granted is appropriate when the facts asserted by the claimant do not entitle him to a legal remedy.").

A complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting *Twombly*, 550 U.S. at 570). The allegations contained in a complaint also must indicate to the court that there is "more than a sheer possibility that a defendant has acted unlawfully. *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* To determine whether a complaint states a plausible claim for relief, a court must engage in a context-specific analysis and "draw on its judicial experience and common sense."

*Id.* at 678–79. The court, however, must construe the allegations of the complaint in the light most favorable to the plaintiff. *See Henke v. United States,* 60 F.3d 795, 797 (Fed. Cir. 1995).

### 5.    Standard Of Review For *Pro Se* Litigants.

*Pro se* plaintiffs' pleadings are held to a less stringent standard than those of litigants represented by counsel. *See Haines v. Kerner,* 404 U.S. 519, 520 (1972) (holding that *pro se* complaints, "however inartfully pleaded," are held to "less stringent standards than formal pleadings drafted by lawyers"). The court traditionally examines the record "to see if [a *pro se*] plaintiff has a cause of action somewhere displayed." *Ruderer v. United States,* 412 F.2d 1285, 1292 (Ct. Cl. 1969). Nevertheless, while the court may excuse ambiguities in a *pro se* plaintiff's complaint, the court "does not excuse [a complaint's] failures." *Henke,* 60 F.3d at 799.

### B.    The Government's September 30, 2016 Motion To Dismiss, Pursuant To RCFC 12(b)(1) and 12(b)(6).

### 1.    The Government's Argument.

The Government reads the August 4, 2016 Complaint to raise three claims:

- wrongful imprisonment, in violation of the 1868 Fort Laramie Treaty's "Bad Men" Clause (Gov't Mot. at 2);

- wrongful civil commitment in violation of the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution (Gov't Mot. at 2); and

- breach of the December 7, 2009 *Cobell* Settlement Agreement (Gov't Mot. at 2).

### a.    Regarding The August 4, 2016 Complaint's Wrongful Imprisonment Claim.

The Government argues that the court does not have jurisdiction to review the decisions of a district court. Gov't Mot. at 4. Therefore, to the extent the August 4, 2016 Complaint raises a collateral attack on Plaintiff's conviction, the court does not have jurisdiction to adjudicate that claim. Gov't Mot. at 4.

In addition, the Government argues that a money damages claim for wrongful conviction, filed under 28 U.S.C. § 1495[4] and 28 U.S.C. § 2513,[5] must allege that Plaintiff's conviction has

---

[4] "The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim for damages by any person unjustly convicted of an offense against the United States and imprisoned." 28 U.S.C. § 1495.

[5] Title 28 U.S.C. § 2513, provides:

(a) Any person suing under section 1495 of this title must allege and prove that:

been reversed or set aside on the ground that he is not guilty or at new trial or rehearing he was found not guilty, or that he has been pardoned upon the stated ground of innocence. Gov't Mot. at 4. But, the wrongful conviction claim set forth in the August 4, 2016 Complaint does not make any of these allegations. Gov't Mot. at 4.

Likewise, the court does not have jurisdiction to adjudicate the August 4, 2016 Complaint's claim that Plaintiff's wrongful conviction violated the 1868 Fort Laramie Treaty's "Bad Men" Clause, because Plaintiff did not exhaust his administrative remedies by first filing a claim with the United States Department of Interior. Gov't Mot. at 4.

> **b.  Regarding The August 4, 2016 Complaint's Wrongful Civil Commitment Claim.**

To the extent the August 4, 2016 Complaint raises a collateral attack on Plaintiff's civil commitment, the court does not have jurisdiction to adjudicate that claim for the reasons stated above. Gov't Mot. at 4. Moreover, the court does not have jurisdiction to adjudicate the constitutional violations alleged in the August 4, 2016 Complaint, because the Fourth, Sixth and Eighth Amendment, as well as the Due Process Clauses of the Fifth and Fourteenth Amendments are not money-mandating. Gov't Mot. at 5.

---

(1) His conviction has been reversed or set aside on the ground that he is not guilty of the offense of which he was convicted, or on new trial or rehearing he was found not guilty of such offense, as appears from the record or certificate of the court setting aside or reversing such conviction, or that he has been pardoned upon the stated ground of innocence and unjust conviction and

(2) He did not commit any of the acts charged or his acts, deeds, or omissions in connection with such charge constituted no offense against the United States, or any State, Territory or the District of Columbia, and he did not by misconduct or neglect cause or bring about his own prosecution.

(b) Proof of the requisite facts shall be by a certificate of the court or pardon wherein such facts are alleged to appear, and other evidence thereof shall not be received.

(c) No pardon or certified copy of a pardon shall be considered by the United States Court of Federal Claims unless it contains recitals that the pardon was granted after applicant had exhausted all recourse to the courts and that the time for any court to exercise its jurisdiction had expired.

28 U.S.C. § 2513(a)–(c).

c.    **Regarding The August 4, 2016 Complaint's Breach Of The December 7, 2009 *Cobell* Settlement Agreement Claim.**

The Government argues that the court does not have jurisdiction to adjudicate tort claims against the United States, such as the intentional poisoning of the Sioux Indian Reservation's public drinking water. Gov't Mot. at 4.

The Plaintiff also does not have standing to bring the claims related to the Government's use of Sioux Reservation lands, the building of roads on the Sioux Reservation, and the alleged poisoning of the Sioux Reservation's water system, because Plaintiff does not allege that any wrongdoing has occurred in a location or in a manner that will affect his person or property. Gov't Mot. at 6.  In addition, Plaintiff lacks standing to pursue claims for violations of the *Cobell* Settlement Agreement, because that agreement provides for payment to a Native American tribe, not for individual members. Gov't Mot. at 6.

In the alternative, the August 4, 2016 Complaint fails to state a claim upon which relief can be granted, pursuant to RCFC 12(b)(6). Gov't Mot. at 7.  The August 4, 2016 Complaint does not identify any statutory or contractual provision, or condition of the December 7, 2009 *Cobell* Settlement Agreement, that entitles Plaintiff to more than $880. Gov't Mot. at 8.  Nor does the August 4, 2016 Complaint identify any provision that prohibits the Government from building roads on the Sioux Reservation.  Finally, the terms of the Settlement Agreement state that class members, such as Plaintiff, "shall be deemed to have released, waived and forever discharged" the Government from land administration claims, such as the claim alleged in the August 4, 2016 Complaint that the Government unlawfully built roads on the Sioux Reservation and/or appropriated the Reservation's natural resources. Gov't Mot. at 9.

2.    **Plaintiff's Response.**

On January 18, 2017, Plaintiff filed a Motion To Alter Or Amend The December 19, 2016 Judgment, that the court considers Plaintiff's Response to the Government's September 30, 2016 Motion To Dismiss.  Therein, Plaintiff responds that the "record reflects [Plaintiff's] efforts to oppose the defendant's motion to dismiss[.]" Pl. Resp. at 2.  In addition, Plaintiff requested that the court grant him leave to amend the August 4, 2016 Complaint, because the related case, *RedBoy v. United States*, No. 17-19, is "material to [Plaintiff's] ability to state the jurisdiction of this court[.]" Pl. Resp. at 2.

3.    **The Court's Resolution.**

The court considers Plaintiff's August 4, 2016 Complaint to allege that the Government:

- imprisoned Plaintiff in breach of the 1868 Fort Laramie Treaty's "Bad Men" Clause (Compl. at 3);

- certified Plaintiff for Civil Commitment in violation of the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution (Compl. at 4);

- denied Plaintiff economically viable use of Indian Land resources through unfair land purchasing and escheatment of "fractionated" Indian Land allotments (Compl. at 2);

- built roads on "Godfrey's Sioux Indian Reservation" without Just Compensation, violating 25 U.S.C. §§ 318(a), 323–25 and the Fifth Amendment to the United States Constitution (Compl. at 2);

- intentionally poisoned the Sioux Indian Reservation's public drinking water and falsely reported Uranium and Chlorine levels on the Reservation (Compl. at 2–3); and

- failed to compensate Plaintiff fully as a member of the Historical Accounting Class in the December 9, 2009 *Cobell* Settlement Agreement (Compl. at 1–2).

### a. Regarding The August 4, 2016 Complaint's Wrongful Conviction Claim.

The United States Court of Federal Claims has "jurisdiction to render judgment upon any claim for damages by any person unjustly convicted of an offense against the United States and imprisoned." 28 U.S.C. § 1495. But,

> [a]ny person suing under section 1495 of this title must allege that . . . [h]is conviction has been reversed or set aside on the ground that he is not guilty of the offense of which he was convicted or on new trial or rehearing he was found not guilty of such offense, as appears from the record or certificate of the court setting aside or reversing such conviction, or that he has been pardoned upon the stated ground of innocence and unjust conviction.

28 U.S.C. § 2513(a)(1).

The August 4, 2016 Complaint does not allege that Plaintiff's conviction was reversed, set aside, or pardoned. Therefore, to the extent that the August 4, 2016 Complaint claims money damages for an unjust conviction, the court does not have jurisdiction to adjudicate that claim.

In addition, the court does not have jurisdiction to adjudicate alleged violations of the 1868 Fort Laramie Treaty's "Bad Men" Clause, unless Plaintiff has exhausted his available administrative remedies before the United States Department of Interior. *See Elk v. United States*, 70 Fed. Cl. 405, 407 (2006) ("As a condition to receiving reimbursement, the [Fort Laramie] Treaty plainly requires that 'proof [be] made to the agent and forwarded to the Commissioner of Indian Affairs at Washington City.'" (quoting Fort Laramie Treaty of 1868, art. L, 15 Stat. 635)). The August 4, 2016 Complaint, however, does not allege that Plaintiff has filed any claim with the Interior Department. Therefore, to the extent that the August 4, 2016 Complaint alleges that Plaintiff's imprisonment violated the Fort Laramie Treaty, the court does not have jurisdiction to adjudicate that claim.

     **b. Regarding The August 4, 2016 Complaint's Wrongful Civil Commitment Claim.**

The August 4, 2016 Complaint alleges that Plaintiff was wrongfully certified for civil commitment in violation of the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution. Compl. at 4. But, the Fourth, Sixth and Eighth Amendments, and the Due Process Clauses of the Fifth and Fourteenth Amendments are not money mandating. *See Trafny v. United States*, 503 F.3d 1339, 1340 (Fed. Cir. 2007) ("[T]he Eighth Amendment is not a 'money-mandating' provision[.]"); *see also Brown v. United States*, 105 F.3d 621, 623 (Fed. Cir. 1997) ("[T]he Fourth Amendment does not mandate the payment of money for its violation."); *Leblanc v. United States*, 50 F.3d 1025, 1028 (Fed. Cir. 1995) (holding that the Due Process Clauses of the Fifth and Fourteenth Amendments are not "a sufficient basis for jurisdiction[,] because they do not mandate payment by the Government"); *Milas v. United States*, 42 Fed. Cl. 704, 710 (1999) ("[The] Sixth Amendment[] [is] not money mandating[.]"), *aff'd* 217 F.3d 854 (Fed. Cir. 1999). Therefore, the court does not have jurisdiction to adjudicate the August 4, 2016 Complaint's wrongful civil commitment claims.

**c. Regarding The August 4, 2016 Complaint's Escheatment And Unfair Purchase-Price Claim.**

The August 4, 2016 Complaint alleges that the Government denied Plaintiff "all economically viable use [of] Indian land resources and enjoyment of Indian land on a long term basis through unfair land purchasing compensation and escheatment of fractionated Indian land allotments[.]" Compl. at 2. "In determining whether the [court] has jurisdiction, [the court must determine] that the [relevant] claim is founded upon a money-mandating source *and* [that] the plaintiff has made a nonfrivolous allegation that it is within the class of plaintiffs entitled to recover under the money-mandating source." *Jan's Helicopter Serv., Inc. v. F.A.A.*, 525 F.3d 1299, 1309 (Fed. Cir. 2008) (emphasis added). Although the Takings Clause is money-mandating, "[a] claimant under the Takings Clause must show that the government, by some specific action, took a private property interest for a public use without just compensation." *Adams v. United States*, 391 F.3d 1212, 1218 (Fed. Cir. 2004); *see also Wyatt v. United States*, 271 F.3d 1090, 1096 (Fed. Cir. 2001) ("It is axiomatic that only persons with a valid property interest at the time of the taking are entitled to compensation."). The August 4, 2016 Complaint, however, does not allege that Plaintiff had a personal property interest in the "Indian land" that escheated to the Government or the Government purchased at an unfair price.

In addition, Plaintiff does not have standing to assert a takings claims based on the escheatment and unfair purchase-price of "Indian land." At a minimum, standing requires the plaintiff to suffer "an invasion of a legally protected interest which is . . . concrete and particularized." *Lujan*, 504 U.S. at 560. Accordingly, in Fifth Amendment takings claims, the court must determine whether the claimant has established a property interest as a threshold matter. *See Am. Pelagic Fishing Co., L.P. v. United States*, 379 F.3d 1363, 1372 (Fed. Cir. 2004). ("[A]s a threshold matter, the court must determine whether the claimant has established a property interest for purposes of the Fifth Amendment."). The August 4, 2016 Complaint does not allege that Plaintiff had any valid real property interest in the "Indian land" at issue. Therefore, the August 4, 2016 Complaint has failed to allege an "invasion to a legally protected interest" that is particularized.

**d.**     **Regarding The August 4, 2016 Complaint's Road Construction And Right-Of-Way Claim.**

"In determining whether the [court] has jurisdiction, [the court must determine] that the [relevant] claim is founded upon a money-mandating source *and* [that] the plaintiff has made a nonfrivolous allegation that it is within the class of plaintiffs entitled to recover under the money-mandating source." *Jan's Helicopter Serv.*, 525 F.3d at 1309 (emphasis added). The August 4, 2016 Complaint alleges that the Government built roads on Sioux Indian Reservation without Just Compensation in violation of the Fifth Amendment's Takings Clause and 25 U.S.C. §§ 318(a), 323–25. Compl. at 2. These provisions are money-mandating. *See Jan's Helicopter Serv.*, 525 F.3d at 1309 ("[T]he Takings Clause is a money-mandating source for purposes of Tucker Act jurisdiction."); *see also* 25 U.S.C. § 325 ("No grant of a right-of-way shall be made without the payment of such compensation as the Secretary of the Interior shall determine to be just."). But, these provisions only compensate individuals with a private property interest in land. *See Wyatt*, 271 F.3d at 1096 ("It is axiomatic that only persons with a valid property interest at the time of the taking are entitled to compensation."); *see also* 25 U.S.C. § 325 ("The compensation received on behalf of *the Indian owners* shall be disposed of under rules and regulations to be prescribed by the Secretary of the Interior." (emphasis added)). The August 4, 2016 Complaint does not allege that Plaintiff had a valid real property interest in any of the Sioux land on which the Government allegedly built roads and right-of-ways. Therefore, the August 4, 2016 Complaint failed to allege that Plaintiff is within a potential class of individuals entitled to recover under the Takings Clause or 25 U.S.C. §§ 318(a), 323–25.

In addition, for the reasons stated above, the August 4, 2016 Complaint does not allege sufficient facts to establish that Plaintiff has standing to assert a Fifth Amendment takings claim based on the Government's construction of roads and right-of-ways on the Sioux Indian Reservation.

     **e.**     **Regarding The August 4, 2016 Complaint's Intentional Poisoning Of The Sioux Reservation Drinking Water.**

The United States Court of Federal Claims does not have jurisdiction to adjudicate cases sounding in tort. *See* 28 U.S.C. § 1491(a)(1) ("The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages *in cases not sounding in tort.*" (emphasis added)); *see also Keene Corp. v. United States*, 508 U.S. 200, 214 (1993) ("[T]ort cases are outside the jurisdiction of the Court of Federal Claims."). Whether an action sounds in tort is determined by the character of the underlying dispute, not by the nomenclature chosen by the parties. *See Brazos Elec. Power Co-op., Inc. v. United States*, 144 F.3d 784, 787 (Fed. Cir. 1998) ("[W]e customarily look to the substance of the pleadings rather than their form.").

In this case, the August 4, 2016 Complaint alleges that the United States intentionally poisoned the Sioux Reservation's public drinking water, but a "civil wrong arising from exposure to a toxic substance" sounds in tort. *See* Toxic Tort, BLACK'S LAW DICTIONARY (10th ed. 2014); *see also* Tort, BLACK'S LAW DICTIONARY (10th ed. 2014) (explaining that a tort is a "civil wrong,

other than breach of contract, for which a remedy may be obtained" and that a typical tort involves an "intentional act resulting in harm"). Therefore, the court has determined that it does not have jurisdiction to adjudicate the claim alleged in the August 4, 2016 Complaint that the Government intentionally poisoned the Sioux Reservation's public drinking water.

> **f.      Regarding The August 4, 2006 Complaint's Breach Of The December 9, 2009 *Cobell* Settlement Agreement Claim.**

"[W]hen a breach of contract claim is brought in the [United States] Court of Federal Claims under the Tucker Act, the plaintiff comes armed with the presumption that money damages are available, so that normally no further inquiry is required." *Holmes v. United States*, 657 F.3d 1303, 1314 (Fed. Cir. 2011). Because "it is axiomatic that a settlement agreement is a contract," the presumption of Tucker Act jurisdiction also applies to claims alleging a breach of a settlement agreement. *See Greco v. Dep't of the Army*, 852 F.2d 558, 560 (Fed. Cir. 1988). That is not to say, that the United States Court of Federal Claims has jurisdiction to adjudicate every claim alleging such a breach. *See Rick's Mushroom Service, Inc. v. United States*, 521 F.3d 1338, 1343 (Fed. Cir. 2008) ("The government's consent to suit under the Tucker Act does not extend to every contract [or settlement agreement]."). The key element is whether the settlement agreement "could fairly be interpreted as contemplating money damages." *Holmes*, 657 F.3d at 1315.

The December 9, 2009 *Cobell* Settlement Agreement provides that, "each member of the Historical Accounting Class shall be paid a per capita amount of $1,000.00 after Final Approval. This will be a per-person, not a per-account, payment." *Cobell v. Salazar*, Civil Action No. 96-1258, ECF No. 3660-2 at ¶ E.3a. The August 4, 2016 Complaint alleges that the Government breached these terms, because Plaintiff is a member of the Historical Accounting Class, but only received $880. Compl. at 1–2. Under these circumstances, the court has determined that the December 9, 2009 *Cobell* Settlement Agreement could fairly be interpreted as contemplating money damages in the event that the Government underpaid a member of the Historical Accounting Class.

The Government argues that Plaintiff "does not identify any statutory or contractual provision, or condition of the settlement agreement, that entitled him to more than the $880 he allegedly received." Gov't Mot. at 8. But, this argument is without merit on its face. Plaintiff alleges that he is a member of the Historical Accounting Class and the December 9, 2009 *Cobell* Settlement Agreement unambiguously entitles members of that class to $1,000 in compensation, $120 more than the $880 Plaintiff allegedly received.

> **C.      Plaintiff's December 19, 2016 Motion To Amend Complaint And Motion For Third Party Representative.**

Under RCFC 15(a)(1), a party may amend a pleading once as a matter of course, within twenty-one days after service of a motion, pursuant to RCFC 12(b). "In all other cases [however] a party may amend its pleading only with the opposing party's written consent or the court's leave." RCFC 15(a)(2). In this case, Plaintiff's December 19, 2016 Motion To Amend was filed eighty days after the Government's September 30, 2016 Motion To Dismiss, pursuant to RCFC 12(b)(1) and 12(b)(6). Therefore, Plaintiff may amend the August 4, 2016 Complaint only with

the opposing party's written consent or the court's leave. *See* RCFC 15(a)(2). On January 4, 2017, the Government filed an opposition to the December 19, 2016 Motion To Amend.

Of course RCFC 15(a)(2) states that, "[t]he court should freely give leave [to amend] when justice so requires." But, the court may exercise its discretion to deny leave, if it finds evidence of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962). "When a party faces the possibility of being denied leave to amend on the ground of futility, that party must . . . proffer sufficient facts supporting the amended pleading that the claim could survive a dispositive pretrial motion." *Kemin Foods, L.C. v. Pigmentos Vegetales Del Centro S.A. de C.V.*, 464 F.3d 1339, 1354–55 (Fed. Cir. 2006).

Plaintiff's December 19, 2016 Motion To Amend states that,

> the herein facts support [] a prima facie case for the jurisdiction of this court by South Dakota Sioux Chad S.Two Hearts. In light of [Plaintiff's] owning allottee shares in Indian Land on the Standing Rock Indian Reservation in North Dakota for which he is also being exploited as a Native American through the *Cobell v. Jewell* Indian Trust Settlement, [Plaintiff] asserts that it is proper for the court to allow [Plaintiff] to amend his complaint.

Pl. Mot. at 3.

The December 19, 2016 Motion, however, does not cure any of the jurisdictional defects in the August 4, 2016 Complaint. Whether the court has jurisdiction to adjudicate the claims in a Complaint filed by Mr. Two Hearts does not affect whether the court has jurisdiction to adjudicate the claims alleged in the August 4, 2016 Complaint. Similarly, Plaintiff's allegation that he owns land in North Dakota, does not affect the court's jurisdiction to adjudicate the August 4, 2016 Complaint's taking and 28 U.S.C. §§ 318(a), 323–25 claims, that are based on the Government's alleged conduct regarding the Sioux Indian Reservation in South Dakota.

For these reasons, the amendments proposed in the December 19, 2016 Motion would not survive a motion to dismiss, pursuant to RCFC 12(b)(1). Therefore, the court has determined that amending the August 4, 2016 Complaint would be futile.

## D.   Plaintiff's December 19, 2016 Motion For Third Party Representative.

RCFC 83.1(a)(3) states that, "[a]n individual who is not an attorney may represent oneself or a member of one's immediate family, but may not represent a corporation, an entity, or any other person in any proceeding before this court." In the December 19, 2016 Motion For Third Party Representative, Plaintiff requests that the court appoint Victor Fourstar a his legal counsel. Pl. Mot. at 2. The December 19, 2016 Motion, however, does not allege that Mr. Fourstar is a licensed attorney, nor that he is a member of Plaintiff's immediate family. Indeed, the December 19, 2016 Motion advises the court that Mr. Fourstar might enroll in law school after he is released from prison on December 9, 2016. Pl. Mot. at 3. For these reasons, Plaintiff's December, 19 2016 Motion For Third Party Representative is denied.

## IV.   CONCLUSION.

For these reasons, the Government's September 30, 2016 Motion To Dismiss, pursuant to RCFC 12(b)(1) and RCFC 12(b)(6), is granted with regard to the August 4, 2016 Complaint's claims, alleging that the Government:

- wrongfully imprisoned Plaintiff in breach of the 1868 Fort Laramie Treaty's "Bad Men" Clause (Compl. at 3);

- certified Plaintiff for Civil Commitment in violation of the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution (Compl. at 4);

- denied Plaintiff economically viable use of Indian Land resources through unfair land purchasing and escheatment of "fractionated" Indian Land allotments (Compl. at 2);

- built roads on "Godfrey's Sioux Indian Reservation" without Just Compensation, violating 25 U.S.C. §§ 318(a), 323–25 and the Fifth Amendment to the United States Constitution (Compl. at 2); and

- intentionally poisoned the Sioux Indian Reservation's public drinking water and falsely reported Uranium and Chlorine level on the Reservation (Compl. at 2–3).

The Government's September 30, 2016 Motion To Dismiss, pursuant to RCFC 12(b)(1) and RCFC 12(b)(6), is denied with regard to the August 4, 2016 Complaint's claim, alleging that the Government failed to compensate Plaintiff fully as a member of the Historical Accounting Class in the *Cobell* Settlement Agreement.  Compl. at 1–2.

Plaintiff's December 19, 2016 Motion To Amend and Motion For Third Party Representative are denied.

**IT IS SO ORDERED.**

**SUSAN G. BRADEN**
**Chief Judge**